# Exhibit 7

| | |
|---|---|
| **From:** | Claus Bennetsen <cbe@horten.dk> |
| **Sent:** | Monday, December 8, 2014 1:04 PM |
| **To:** | Ben-Jacob, Michael |
| **Cc:** | Wells, Peter; Kristian Kaltoft Nielsen |
| **Subject:** | SV: Danish Securities Law Question |
| **Attachments:** | Standard Form_Major Shareholder_Notification.pdf; Major Shareholder Notification Process - Denmark (FSA).pptx |

Dear Michael,

Thank you for your below e-mail casting some more light on the likely trading patterns. I am sorry that I can only now attend to it. Would a call tomorrow at 08.30 a.m. EST/2.30 p.m. CET work for you?

As a precursor to a call and to sum up where we got to in our call last week and to give some guidance on the question that you raise in your below e-mail:

1. A holder of shares in a Danish publicly traded company is required to report to the public company and the Danish FSA immediately (the day of trading) upon acquiring 5 % or more of the total share capital or voting rights in the public company. The same reporting requirement apply if changes are made to the number of shares hold and crossing (up or down) the threshold levels: 5 %, 10 %, 15 %, 20 %, 25 %, 1/3, 50 %, 2/3 or 90 %. Please note, that derivatives such as call-options could be influencing if a threshold is met. Kindly also note that the notification rules also apply on winding down a portfolio.
2. The reporting to the Danish FSA should consist of a filled out Standard Form set out as an attachment to the relevant Executive Order issued pursuant to the Danish Securities Trading Act. The message of crossing a threshold addressed to the public Danish company should include i) a short specification of the situation (e.g. number of shares, direct or indirect ownership etc.) ii) the date of crossing the threshold, iii) the identity of the shareholder. The reporting must be in Danish or English and needs to done on-line. We have set out the procedure in the attached brief power point presentation and the relevant form is also attached.
3. Effective 15 December 2014 an amendment to the Danish Companies Act will come into force requiring threshold filings in both listed and unlisted companies to be made to the database run by the Danish Business Authority with effect no later than 15 June 2015. The fine detail and logistics thereof are still being worked out but we should be happy to keep you up-to-date on them.
4. The Danish FSA generally considers Anglo-Saxon trusts to have a separate legal personality for purposes of requiring them to report and thus the trust must report – in the words of the relevant Executive Order "..possessing shares in the company on its own behalf but the account of another physical or legal person"
5. There are no other reporting requirements than those following from the Danish Trading in Securities Act and the Danish Companies Act (once phased in)
6. The critical point in the discussion is to define when two or several parties must aggregate their shares (voting rights in the strict sense) which is not based on the same authority as the acting in concert term that his being used in connection with the mandatory offer rules but which is likely to be interpreted largely in the same way. The standard answer is that that is when they are parties to a shareholders' agreement obliging them to vote in a particular manner on a number of issues – in the words of the relevant Executive Order, "..entered into an agreement obliging the parties to conduct a long term policy towards the management of the company in question through use of their voting rights" However, the FSA has on numerous occasions made it clear that such "agreement" can be quite informal and indeed it seems that if parties are somehow closely connected through business association in other ways, there is a strong presumption that such parties are acting in concert. That is not to say that this presumption cannot be disproved but the burden would be on the parties to show that they are indeed not acting in concert in a particular

CONFIDENTIAL              WH_MDL_00317141

context and that could of course be quite a heavy burden of proof to lift. Thus there is as mentioned one example dating 11 years back where the reporting authority was the Copenhagen Stock Exchange and not the FSA and where a sister-in-law bought shares in a company that her sister's husband was a major shareholder in and the stock exchange said that they had no indication of concerted trading. The purchaser was indeed very wealthy and a well-known investor in shipping companies but I would still be doubtful whether the FSA would come to a similar decision as it was heavily criticised at the time. It also seems that the words "long term" in the Executive Order have fallen somewhat in the background. Furthermore the presumption would not either catch coordinated voting on an ad hoc basis or other "active ownership" initiatives that are not part of a long term coordinated effort. Investment managers acting for several funds will normally report the aggregate of shares in the funds' ownership.

I hope that the above is of assistance, even if it would seem that most of the trading patterns that you set out in your below e-mail could fall within the rule of presumption of concerted trading depending on a very careful analysis of the parties' relationship.


Kind regards

**Claus Bennetsen**
Partner


T +45 3334 4163 | M +45 5234 4163 | vCard | See profile

**HORTEN**

Horten Advokatpartnerselskab | Philip Heymans Allé 7 | DK-2900 Hellerup, Copenhagen
T +45 3334 4000 | F +45 3334 4001 | CVR 33775229 | horten.dk

*Horten Advokatpartnerselskab. Please note that information contained in this e-mail and any attachments is intended for the use of the addressee only and is confidential and may contain legally privileged information. If received in error, please delete it from your system and notify us by phone. Any dissemination, distribution, copying or use of this communication without our prior permission is strictly prohibited.*

**Fra:** Ben-Jacob, Michael [mailto:Michael.Ben-Jacob@kayescholer.com]
**Sendt:** 7. december 2014 02:03
**Til:** Claus Bennetsen
**Cc:** Wells, Peter; Kristian Kaltoft Nielsen
**Emne:** RE: Danish Securities Law Question

Claus,

Thanks for your time on the call the other day. Could we possibly have a follow up call at 8:30am NY time / 2:30pm Copenhagen on Monday? If not, can you suggest alternatives?

I have since sent a summary email to my clients and have had a follow up conversation with them. Based on my summary to them, which I paste below for your information, they had some follow up questions. As it turns out, at certain points in time the aggregate across several trading accounts in question may own as much as 20% of the publically traded stock.i

To explore this more deeply, here is a more specific outline of the structure: four individuals created US pension plans, which are formed as trusts for US purposes and each individual is the beneficial owner of and trustee of his particular pension plan. Each pension plan enters into a general partnership with the other pension plans. Three of the pension plans have a 95% interest in the general partnership and one pension plan has a 5% interest in the general

CONFIDENTIAL         WH_MDL_00317142

partnership. The general partnership has contracted with one of the pension plans to open a trading account and trade on behalf of the partnership. The trading account is titled in the name of the pension plan (not the partnership).

The above structure is replicated several times with the three pension plan/95% owners being beneficially owned by the same parties and the fourth pension plan/5% owner being an unrelated party. I note that even the three 95% owners at times do not act together, e.g., one or more of them may decide to trade in certain stocks and not others, sit out for a round of trading altogether, they each exercise independent decision making authority, etc. So, on the one hand, one might say that they do not act together and, on the other hand, given that they do share some expenses (legal fees, administrative assistants, etc., but not all expenses) one might say that they act in concert.

As you will see below, what I understood from you was that under current law one would look only to the legal title holder of the trading account and not further UNLESS the pension plans trading in those account are acting in concert. If we look to only a single trading account we do not exceed the 5% reporting threshold. But if trading accounts are acting in concert we would aggregate for purposes of determining reporting requirements. Here is how we would break this down analytically:

1. If an individual has two pension plans and each has a separate trading account, but the pension plans are owned and controlled by the same individual, would the two accounts be aggregated for reporting purposes?
2. If two or more individuals have such pension plans each with a separate trading account and the individuals share information, some (but not all) resources and expenses, and exercise separate independent decision making as to whether to trade, etc., would those two trading accounts be aggregated for reporting purposes?
3. If those two pension plans enter into two partnerships which partnerships each hold a trading account, would those two trading accounts be aggregated?
4. If the partnership 1 appoints pension plan 1 as agent and legal title holder of an account, and partnership 2 appoints pension plan 2 as legal title holder of the account, but the two partnerships have the pension plans as common partners and share some resources as described, would the accounts be aggregated?

Here is the text of the summary email:

Claus explained that unless you meet the 5% ownership threshold there are no reporting requirements of any sort. There are additional reporting requirements at the 10% and 25% thresholds but we did not explore those as I did not think they would be relevant. Let me know if you think otherwise.

As for determining whether the 5% threshold is met, under current law one looks only to legal title ownership and not to beneficial ownership. In this context, one looks to a particular moment in time. So, for example, in the first instance they would look to the pension plan as the possible reporting entity because the plan holds legal title to the trading account, even though the pension plan is operating as agent for the general partnership. Moreover, one would look to the total shares held by the plan at a point in time and not aggregate, for example, the number of shares held by a plan over the course of a year, month or other period. One would, however, aggregate the number of shares held by a particular pension plan in different accounts.

There are related party rules that would aggregate the total holdings to determine if the threshold is met if, for example, a group of plans were deemed to be acting in concert. I did not delve into the particulars of the instant trading strategy or structures. But we may need to explore this further if, when we aggregate among your pension plans we reach the 5% threshold . I add the caveat that I suppose in the extreme one could include the trading being done by your former partners—but I think that would be a bit far afield under the current circumstances.

In summary, if among your various pension plans there is no point in time when you own 5% or more then we don't need to go any further. If because of aggregation that may apply if you are deemed to be acting in concert you reach or exceed the 5% threshold then we need to explore further what constitutes acting in concert.

CONFIDENTIAL                                                                                                                      WH_MDL_00317143

All of this stands to change, however. Claus indicates that a new body of legislation comes into effect on December 15th and which will be phased in over the next six months. Under this legislation it appears that the Danish FSA may look to beneficial ownership for determining reporting thresholds. Whether this interpretation of the new rules is correct is an open question and practitioners are awaiting further guidance. I have asked Clause to keep us abreast of developments. Again, even here if in a worst case we aggregate all the trading because of common beneficial ownership and the 5% threshold is not met there would be no reporting requirement.

If you are subject to reporting then the reporting must be done "immediately". This word is strictly interpreted under some precedents to mean that a report must be filed the same trading day. The report is filed in two places: with the Danish FSA and with the company. As to the former there is a specific form, which is available in English and which Claus is going to forward to me, and which for things like a description of the transaction, number of shares involved, name of owner, date of trading, and the like. No doubt we would have many questions as to how to appropriate complete this form if required. As to informing the company, there is no prescribe form or format and I am told that the practice is to send an email to the company with similar information.


\*\*\*
IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Michael Ben-Jacob
KAYE SCHOLER LLP
425 Park Avenue | New York, New York 10022
T: +1 212.836.8310 | F: +1 212.836.6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com

**From:** Claus Bennetsen [mailto:cbe@horten.dk]
**Sent:** Sunday, November 30, 2014 3:43 PM
**To:** Ben-Jacob, Michael; Firth, Simon
**Cc:** Wells, Peter; Kristian Kaltoft Nielsen
**Subject:** SV: Danish Securities Law Question

Will do.


Kind regards

**Claus Bennetsen**
Partner

T +45 3334 4163 | M +45 5234 4163 | vCard | See profile


**HORTEN**

———

Horten Advokatpartnerselskab | Philip Heymans Allé 7 | DK-2900 Hellerup, Copenhagen
T +45 3334 4000 | F +45 3334 4001 | CVR 33775229 | horten.dk

*Horten Advokatpartnerselskab. Please note that information contained in this e-mail and any attachments is intended for the use of the addressee only and is confidential and may contain legally privileged information. If received in error, please delete it from your system and notify us by phone. Any dissemination, distribution, copying or use of this communication without our prior permission is strictly prohibited.*

4

**Fra:** Ben-Jacob, Michael [mailto:Michael.Ben-Jacob@kayescholer.com]
**Sendt:** 30. november 2014 21:33
**Til:** Claus Bennetsen; Firth, Simon
**Cc:** Wells, Peter; Kristian Kaltoft Nielsen
**Emne:** RE: Danish Securities Law Question

Claus,

Thanks for your email. Tuesday at 8:30am NY time works well. Please call me then.

Best,

mbj


\*\*\*
IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Michael Ben-Jacob
KAYE SCHOLER LLP
425 Park Avenue | New York, New York 10022
T: +1 212.836.8310 | F: +1 212.836.6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com


This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (+1 212.836.8310) and delete the message, along with any attachments, from your computer. Thank you.

**From:** Claus Bennetsen [mailto:cbe@horten.dk]
**Sent:** Sunday, November 30, 2014 3:29 PM
**To:** Ben-Jacob, Michael; Firth, Simon
**Cc:** Wells, Peter; Kristian Kaltoft Nielsen
**Subject:** SV: Danish Securities Law Question

Dear Michael.

Thank you for contacting us in this respect. We have advised a number of U.S. funds and fund managers in this respect and should be happy to assist you and your clients.

I would be available tomorrow Monday 1 December from 10 a.m. EST/4 p.m. CET and onwards and Tuesday 2 December from 08.30 a.m./2.30 p.m. CET so I will leave it up to you when we should call you.


Kind regards

**Claus Bennetsen**
Partner

T +45 3334 4163 | M +45 5234 4163 | vCard | See profile

5

CONFIDENTIAL
WH_MDL_00317145

**HORTEN**

Horten Advokatpartnerselskab | Philip Heymans Allé 7 | DK-2900 Hellerup, Copenhagen
T +45 3334 4000 | F +45 3334 4001 | CVR 33775229 | horten.dk

*Horten Advokatpartnerselskab. Please note that information contained in this e-mail and any attachments is intended for the use of the addressee only and is confidential and may contain legally privileged information. If received in error, please delete it from your system and notify us by phone. Any dissemination, distribution, copying or use of this communication without our prior permission is strictly prohibited.*

**Fra:** Ben-Jacob, Michael [mailto:Michael.Ben-Jacob@kayescholer.com]
**Sendt:** 30. november 2014 20:41
**Til:** Claus Bennetsen; Firth, Simon
**Cc:** Wells, Peter
**Emne:** RE: Danish Securities Law Question

Simon, thanks for your kind introduction.

Claus, thank you for your willingness to assist. Can we do a call some time tomorrow or Tuesday morning NY time? I am generally available beginning at 8:30am NY time.

The specific issues we would like your input on are as follows:

1. What are the disclosure/reporting requirements for a holder of shares in a public company in Denmark? Is it 5% of outstanding shares or some other measurement?
2. What information needs to be disclosed at each reporting threshold level?
3. Is it only the Danish FSA that sets the requirements or are there other regulatory bodies involved and, if so, what are their requirements?
4. In our case, it is a trust that is purchasing the shares. Would the disclosures involve naming the trustee, the beneficiary, both? Is there a notion of related parties?
5. Are there any other requirements that come to mind that we should be aware of?

Please email your invoice to my attention and I will see that it is met.

Regards

mbj


\*\*\*

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Michael Ben-Jacob
KAYE SCHOLER LLP
425 Park Avenue | New York, New York 10022
T: +1 212.836.8310 | F: +1 212.836.6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com

6

This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (+1 212.836.8310) and delete the message, along with any attachments, from your computer. Thank you.

**From:** Claus Bennetsen [mailto:cbe@horten.dk]
**Sent:** Tuesday, November 25, 2014 7:08 AM
**To:** Firth, Simon
**Cc:** Ben-Jacob, Michael; Wells, Peter
**Subject:** SV: Danish Securities Law Question

Dear Simon, dear Michael,

I should be happy to assist and you will find my details below.


Kind regards

**Claus Bennetsen**
Partner, Head of Banking & Finance

T +45 3334 4163 | M +45 5234 4163 | vCard | See profile


**HORTEN**
___


Horten Advokatpartnerselskab | Philip Heymans Allé 7 | DK-2900 Hellerup, Copenhagen
T +45 3334 4000 | F +45 3334 4001 | CVR 33775229 | horten.dk

*Horten Advokatpartnerselskab. Please note that information contained in this e-mail and any attachments is intended for the use of the addressee only and is confidential and may contain legally privileged information. If received in error, please delete it from your system and notify us by phone. Any dissemination, distribution, copying or use of this communication without our prior permission is strictly prohibited.*

**Fra:** Firth, Simon [mailto:Simon.Firth@kayescholer.com]
**Sendt:** 25. november 2014 13:04
**Til:** Claus Bennetsen
**Cc:** Ben-Jacob, Michael; Wells, Peter
**Emne:** Danish Securities Law Question

Dear Claus,

I hope all is well with you.

This is to introduce you to Michael Ben-Jacob in our New York office who is looking for some advice on a Danish securities law question. Michael will be in touch to let you know what he needs from you.

I have also copied Michael's contact details here.

Michael Ben-Jacob
Kaye Scholer LLP
250 West 55th Street | New York, New York 10019-9710
T: (212) 836-8310 | F: (212) 836-6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com

Best wishes.

7

CONFIDENTIAL   WH_MDL_00317147

Regards,

Simon

Simon Firth
KAYE SCHOLER LLP
140 Aldersgate Street | London EC1A 4HY
United Kingdom
T: +44 (0)20.7105.0583 | F: +44 (0)20 7105 0505
SFirth@kayescholer.com | www.kayescholer.com

--------------------------------------------------------------------------------

THIS EMAIL AND ANY ATTACHED FILES ARE CONFIDENTIAL AND MAY BE LEGALLY PRIVILEGED. If you are not the addressee, any disclosure, reproduction, copying, distribution, or use of this communication is strictly prohibited. If you have received this transmission in error please notify the sender immediately and then delete this email. Email transmission cannot be guaranteed to be secure or error or omission free. It may be corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. No liability is accepted in respect of any of the above.

Kaye Scholer LLP is a Delaware (USA) Limited Liability Partnership and is authorised and regulated by the Solicitors Regulation Authority under number 342829. A list of the names of the partners and their professional qualifications is open to inspection at the principal office, Second Floor, 140 Aldersgate Street, London EC1A 4HY. The partners are either solicitors or registered foreign lawyers. The term 'partner' is used to refer to a member or an employee or consultant of Kaye Scholer LLP who is a lawyer with equivalent standing and qualification.

Responsibility for emails related to the business of Kaye Scholer LLP lies with Kaye Scholer LLP and not the individual sender. Where this email is unrelated to our business the opinions expressed within this email are the opinions of the sender and do not necessarily constitute those of Kaye Scholer LLP.

Kaye Scholer LLP will neither give nor accept any undertakings by email without specific prior written agreement. Kaye Scholer LLP does not accept service by e-mail of court proceedings, other proceedings or formal notices of any kind without specific prior written agreement. Notification with regard to privacy: Kaye Scholer LLP may monitor the use of and intercept emails on its equipment and systems. Emails sent and received may be read as permitted by English Law.

CONFIDENTIAL                                                                                                    WH_MDL_00317148