# Exhibit 19 Part 4

**OLD PARK LANE CAPITAL PLC⁺**

All investments could be exposed to regulatory and/or legal risk.

Returns on all, and particularly new, investments are at risk from regulatory and/or legal actions and changes which can, amongst other issues, alter the profit potential of an investment. Legal changes could even have the effect that a previously acceptable investment becomes illegal. Changes to related issues such as tax may also occur and could have a large impact on profitability. Such risk is unpredictable and can depend on numerous political, economic and other factors. For this reason, this risk is greater in emerging markets but does apply everywhere. In emerging markets, there is generally less government supervision and regulation of business and industry practices, stock exchanges and over-the counter markets.

The type of laws and regulations with which investors are familiar in the EEA may not exist in some places, and where they do, may be subject to inconsistent or arbitrary application or interpretation and may be changed with retroactive effect. Both the independence of judicial systems and their immunity from economic, political or nationalistic influences remain largely untested in many countries. Judges and courts in many countries are generally inexperienced in the areas of business and corporate law. Companies are exposed to the risk that legislatures will revise established law solely in response to economic or political pressure or popular discontent.

There is no guarantee that an overseas investor would obtain a satisfactory remedy in local courts in case of a breach of local laws or regulations or a dispute over ownership of assets. An investor may also encounter difficulties in pursuing legal remedies or in obtaining and enforcing judgments in overseas courts.

8.  **Operational Risk**

Operational risk, such as breakdowns or malfunctioning of essential systems and controls, including IT systems, can impact on all financial products. Business risk, especially the risk that the business is run incompetently or poorly, could also impact on shareholders of, or investors in, such a business. Personnel and organisational changes can severely affect such risks and, in general, operational risk may not be apparent from outside the organisation.

9.  **Liquidity and Discretionary Investment Services Accounts**

Withdrawals that you make from Discretionary Investment Services accounts of Debt repaid from such accounts may adversely affect the overall performance of your portfolio. Furthermore, where you instruct us to purchase or liquidate sizeable assets in a given portfolio with concentrations in a particular market, then this may affect the price: e.g. a significant withdrawal from a portfolio may compel us to sell positions at a price that we normally would not have sold at.

10. **U.S. Depositor Preference**

In the liquidation or other resolution of a U.S. insured depositary institution, deposits in U.S. offices and certain claims for administrative expenses and employee compensation are afforded a priority over other general Unsecured claims, including deposits in offices outside the US.

<u>Part IV: Transaction and Service Risks</u>

1.  **Contingent Liability Investment Transactions**

Contingent liability investment transactions, which are margined, require you to make a series of payments against the purchase price, instead of paying the whole purchase price immediately.

CONFIDENTIAL

JHVM_0004767

# OLD PARK LANE CAPITAL PLC⁺

If you trade in futures, contracts for differences or sell options, you may sustain a total loss of the margin you deposit with your firm to establish or maintain a position. If the market moves against you, you may be called upon to pay substantial, additional margin at short notice to maintain the position. If you fail to do so within the time required, your position may be liquidated at a loss and you must be responsible for the resulting deficit. Even if a transaction is not margined, it may still carry an obligation to make further payments in certain circumstances over and above any amount paid when you entered the contract.

Margined or contingent liability transactions that are not traded on a recognised or designated investment exchange may be exposed to substantially greater risks.

Where a firm is managing investments for you and your account includes an uncovered open position in a contingent liability transaction, they should report to you any loss exceeding any predetermined threshold agreed between you both no later than the end of the business day on which the threshold is exceeded or (where it is exceeded on a non-business day) the next business day.

2.    **Collateral**

If you deposit collateral as security with your firm, the way in which it will be treated will vary according to the type of transaction and where it is traded. There could be significant differences in the treatment of your collateral, depending on whether you are trading on a regulated market (see 4 below), with the rules of that exchange (and the associated clearing house) applying, or trading on another exchange or, indeed, off-exchange. Deposited collateral may lose its identity as your property once dealings on your behalf are undertaken. Even if your dealings should ultimately prove profitable, you may not get back the same assets which you deposited, and may have to accept payment in cash. You should ascertain from the firm how your collateral will be dealt with.

3.    **Short Sales**

Selling "short" means to sell equity shares that you do not own at the time of the sale. The seller has an obligation to deliver the product sold at the settlement date which will generally be a few days later than the trade date, so he will either go into the market to buy the shares for delivery, he will "borrow" the shares under a stock lending arrangement (for further detail on this, see 11 below). Short selling is a technique used by investors who want to try and profit from the falling price of a share. If the price of the share drops after the investor has sold short (in other words at the time when he is buying or borrowing the shares for delivery), the investor will make a profit. If however the price of the share rises after the investor has sold short, the investor will have automatically made a loss, and the loss has the potential to get bigger and bigger if the price of the share continues to rise before the investor has gone into the market to buy or borrow the share to settle the short sale.

4.    **Off-Exchange Transactions**

Certain Financial Services Authorities have categorised certain exchanges as recognised or designated investment exchanges. A list of these exchanges can be found on the relevant regulators' website. Transactions which are traded elsewhere may be exposed to substantially greater risks.

5.    **Limited Liability Transactions**

Before entering into a limited liability transaction, you should obtain from the firm a formal written statement confirming that the extent of your loss liability on each transaction will be limited to an amount agreed by you before you enter into the transaction. The amount you can lose in limited liability transactions will be less than in other margined transactions, which have no predetermined loss limit. Nevertheless, even though the extent of loss will be subject to the agreed limit, you may sustain the loss in a relatively short time. Your loss may be limited, but the risk of sustaining a total loss to the amount agreed is substantial.

TERMS AND CONDITIONS FOR CUSTODY SERVICES
JANUARY 2015

29

CONFIDENTIAL
JHVM_0004768

**OLD PARK LANE CAPITAL PLC⁺**

6. **Commissions**

Before you begin to trade, you should obtain details of all commissions and/or other charges for which you will be liable.

7. **Suspensions of Trading and Grey Market Investments**

Under certain trading conditions it may be difficult or impossible to liquidate a position. This may occur, for example, at times of rapid price movement if the price rises or falls in one trading session to such an extent, that under the rules of the relevant exchange trading, is suspended or restricted. Placing a stop-loss order will not necessarily limit your losses to the intended amounts, because market conditions may make it impossible to execute such an order at the stipulated price. Transactions may be entered into in:

(a)   a security whose listing on an exchange is suspended, or the listing of or dealings in which have been discontinued, or which is subject to an exchange announcement suspending or prohibiting dealings; or

(b)   a grey market security, which is a security for which application has been made for listing or admission to dealings on an exchange where the security's listing or admission has not yet taken place (otherwise than because the application has been rejected) and the security is not already listed or admitted to dealings on another exchange.

There may be insufficient published information on which to base a decision to buy or sell such securities.

8. **Deposited Cash And Property**

You should familiarise yourself with the protections accorded to you in respect of money or other property you deposit for domestic and foreign transactions, particularly in the event of a firm insolvency or bankruptcy. The extent to which you may recover your money or property may be governed by specific legislation or local rules. In some jurisdictions, property, which had been specifically identifiable as your own, will be prorated in the same manner as cash for purposes of distribution in the event of a shortfall.

9. **Stabilisation**

Transactions may be carried out in securities where the price may have been influenced by measures taken to stabilise it. Stabilisation enables the market price of a security to be maintained artificially during the period when a new issue of securities is sold to the public. Stabilisation may affect not only the price of the new issue but also the price of other securities relating to it. Regulations allow stabilisation in order to help counter the fact that, when a new issue comes on to the market for the first time, the price can sometimes drop for a time before buyers are found.

Stabilisation is carried out by a 'stabilisation manager' (normally the firm chiefly responsible for bringing a new issue to market). As long as the stabilising manager follows a strict set of rules, he is entitled to buy back securities that were previously sold to investors or allotted to institutions which have decided not to keep them. The effect of this may be to keep the price at a higher level than it would otherwise be during the period of stabilisation.

The Stabilisation Rules:

(c)   limit the period when a stabilising manager may stabilise a new issue;

(d)   fix the price at which a stabilising manager may stabilise (in the case of shares and warrants but not bonds); and

CONFIDENTIAL

(e)  require a stabilising manager to disclose that he may be stabilising but not that he is actually doing so.

The fact that a new issue or a related security is being stabilised should not be taken as any indication of the level of interest from investors, nor of the price at which they are prepared to buy the securities.

**10.   Non-Readily Realisable Investments**

Both exchange listed and traded and off-exchange investments may be non-readily realisable. These are investments in which the market is limited or could become so. Accordingly, it may be difficult to assess their market value and/or to liquidate your position.

**11.   LIFFE: Exclusion Of Liability**

Euronext LIFFE is the derivatives arm of the Pan-European Stock Exchange Euronext.

(a)  Business on the London International Financial Futures ("LIFFE") market operated by LIFFE may from time to time be suspended, restricted or closed for such period as may be determined in the interests of maintaining a fair and orderly market in accordance with the Rules of LIFFE. Any such action may result in your broker, when acting on your behalf, being prevented from, or hindered in, entering into Transactions in accordance with the Rules of LIFFE.

(b)  Inter alia, business on the market may from time to time be suspended or restricted or the market may from time to time be closed for a temporary period or for such longer period as may be determined in accordance with LIFFE's Rules on the occurrence of one or more events which require such action to be taken in the interests of, inter alia, maintaining a fair and orderly market. Any such action may result in your broker, acting on your behalf, being unable to enter into contracts in accordance with LIFFE's Rules. Furthermore your broker, acting on your behalf, may from time to time be prevented from or hindered in entering into contracts in accordance with LIFFE's Rules as a result of a failure of some or all market facilities. We would also like to draw the following exclusion of liability to your attention. Unless otherwise expressly provided in LIFFE's Rules or in any other agreement to which the Exchange is party, the broker and the Exchange shall not be liable to you for loss (including any indirect or consequential loss including, without limitation, loss of profit), damage, injury or delay, whether direct or indirect, arising from any of the circumstances or occurrences referred to above or from any act or omission of the Exchange, its officers, employees, agents or representatives under LIFFE's Rules or pursuant to the Exchange's obligations under statute or from any breach of contract by or any negligence howsoever arising of the Exchange, its officers, employees, agents or representatives.

(c)  LIFFE has a number of powers which, if exercised, may impact upon the broker's ability to submit an order on behalf of you or which may lead to the cancellation of an order after submission to the LIFFE CONNECT™ Trading Host prior to execution. In particular, in addition to the powers already available to LIFFE (including those in relation to investor protection and proper markets), you should be aware that, in respect of LIFFE CONNECT™:

- LIFFE has the power to suspend our access, or access via a particular ITM or ITMs, following a single warning, and to terminate our access under certain conditions;

- LIFFE will cancel all outstanding orders on our default;
- orders outside the price limits will be rejected automatically by the Trading Host;
- all orders (with the exception of GTC orders) will be cancelled automatically at Market Close or when the ITM under which the order was submitted is logged out without the order being transferred to an alternative ITM;

**OLD PARK LANE CAPITAL PLC**[+]

- all orders (including GTC orders) will be cancelled at close of business on the Last Trading Day of the expiry month to which they relate; and
- all orders (with the exception of GTC orders) will be cancelled automatically if the Trading Host fails.

For the purposes of this paragraph 11, the terms "GTC order", "ITM", "Last Trading Day", "LIFFE CONNECT™", "Market Close" and "Trading Host" shall have the meanings ascribed to them in the LIFFE Rules.

12. **Stock Lending / Repo's**

The effect of lending (or repo'ing) securities to a third party is to transfer title to them to the borrower (or repo purchaser) for the period that they are lent (or repo'ed). At the end of the period, subject to default of the borrower (or repo purchaser), the lender (or repo seller) receives back securities of the same issuer and type. The borrower's (or repo purchaser's) obligation to transfer equivalent securities is secured against collateral (which is usually transferred by a title transfer mechanism pursuant to market standard agreements). There is, accordingly, credit risk. Lending (or repo'ing) securities may affect your tax position.

13. **Strategies**

Particular investment strategies will carry their own particular risks. For example, certain strategies, such as 'spread' position or a 'straddle', may be as risky as a simple 'long' or 'short' position.

CONFIDENTIAL                                                                                                              JHVM_0004771

# LICENCE TERMS OF THE OCTAVE SYSTEM

1. **ABOUT US**

    Hydra Capital Limited is a limited liability company registered under the laws of England and Wales with registration number 09398957 and whose registered office is at Dalton House, 60 Windsor Avenue, London, United Kingdom, SW19 2RR ("**Supplier**").

2. **ABOUT THE TERMS**

    2.1 The terms of this Licence (the "**Licence**") will govern your use of the Octave system (the "**System**"). This Licence also applies to any updates, supplements, internet-based services and support services that the Supplier may provide to you as part of the System. You agree that valid consideration has been provided by the Supplier in permitting you to enter into this Licence. This Licence shall come into effect on the date that you gain access to the System ("**Effective Date**").

    2.2 **BY USING THE SYSTEM, YOU ARE ACCEPTING THIS LICENCE. IF YOU DO NOT ACCEPT THIS LICENCE, YOU WILL NOT BE ABLE TO HAVE ACCESS TO THE SYSTEM.**

3. **USING THE SYSTEM**

    3.1 In consideration of the Fee (as defined below) paid by you to the Supplier, the Supplier hereby grants to you, a non-exclusive, non-transferable licence to use the System until these terms are terminated by the Supplier or by you.

    3.2 In order to use the System, you are required to fill out the Investor Profile form (the "**Form**"). Together with this licence, the Form will form the agreement between the Supplier and you in relation to the System.

    3.3 Subject to Clause 3.2, the Supplier will provide you with a unique log-in ID and password to access the System which shall only be used by authorised persons. If you become aware of any unauthorised disclosure or use of the ID you shall promptly notify the Supplier.

    3.4 You agree and acknowledge that:

        3.4.1 where you have given an instruction via the System it shall be irrevocable and the Supplier shall be under no obligation to take steps to revise it;

        3.4.2 an instruction by you will only be effective when you receive a confirmation of receipt from the System; and

        3.4.3 neither the receipt as stated in 3.4.2 above nor any other confirmation of the receipt of an instruction shall impose any obligation upon the Supplier to check to see if the instruction is carried out within a particular time.

    3.5 The Supplier shall use its reasonable endeavours to ensure continuous availability of the System during trading hours. Notwithstanding the above and any other term of this Licence, the Supplier reserves the right, in its sole discretion, to withdraw or suspend the System or any part thereof at any time without notice.

    3.6 You acknowledge that instructions provided to the System could be routed via third party systems and networks that are outside the control of the Supplier.

    3.7 The Supplier shall not be liable for any loss or damage suffered as a result of:

CONFIDENTIAL

JHVM_0004772

3.7.1 instructions entered by you becoming corrupted, lost or wrongly communicated in transmission; and/or

3.7.2 any delay in the transmission and/or instructions, enquiries, messages or other information transmitted by the System.

## 4. SCOPE OF LICENCE

4.1 Save as set out in Clauses 3.1, you shall not acquire any right, title or interest in whole or in part of any intellectual property rights of the Supplier and all such rights are reserved by the Supplier. You acknowledge that the System constitutes valuable intellectual property of the Supplier.

4.2 You acknowledge that you have no right to have access to the System in source code form or in unlocked coding or with comments.

4.3 You acknowledge that the System has not been developed to meet your individual requirements, and that it is therefore your responsibility to ensure that the facilities and functions of the System meet your requirements.

4.4 Except and only to the extent that applicable law permits, you have no right (and shall not permit any third party, including affiliates) to:

4.4.1 copy, adapt, reverse engineer, decompile, disassemble, modify, combine or make error corrections to the System in whole or in part;

4.4.2 sub-licence, transfer, assign, novate, publish, distribute, disseminate, rent, loan or convey the benefit or burden of this Licence or the System in whole or in part;

4.4.3 use the System for commercial software hosting services;

4.4.4 allow the System to become the subject of any charge, lien or encumbrance; and

4.4.5 deal in any other manner with any or all of its rights and obligations under this Licence.

## 5. REPRESENTATIONS AND WARRANTIES

5.1 You hereby represent and warrant to the Supplier on the Effective Date and on a continuing basis that:

5.1.1 you are a duly incorporated or formed entity validly existing under the laws of its jurisdiction of incorporation or formation and have all requisite corporate power and authority to own assets and conduct business as it is being conducted;

5.1.2 you have full corporate or other applicable authority and power to execute, deliver and perform your obligations under this Licence in the manner contemplated pursuant to this Licence and to carry out the transactions contemplated herein;

5.1.3 you have taken all necessary corporate, shareholder, member, manager or other action and obtained all required or desirable authorisations to enable you to execute, deliver and perform its obligations under this Licence and the transactions contemplated herein and to make this Licence admissible in evidence in your jurisdiction of incorporation or formation, and any such authorisations obtained or effected are in full force and effect;

5.1.4 the execution, delivery and performance of the obligations in, and transactions contemplated by, this Licence does not and will not contravene or conflict with:

CONFIDENTIAL

JHVM_0004773

    (A) your constitutional documents;

    (B) any agreement or instrument binding on your assets, or constitute a default or termination event (however described) under any such agreement or instrument; or

    (C) any applicable law or regulation or judicial or official order;

  5.1.5 your obligations under this Licence are legal, valid, binding and enforceable and this Licence constitutes legal, valid and binding obligations enforceable in accordance with its terms;

  5.1.6 you have not relied on or been induced to enter into this Licence by any representation or warranty of any nature, whether express or implied, other than expressly set out in this Licence and the Supplier is not liable to you for any representation or warranty of any nature, whether express or implied, except for those set out in this Licence; and

  5.1.7 the choice of English law as the governing law of this Licence will be recognised and enforced in its jurisdiction of incorporation and any judgment obtained in England or Wales in relation to this Licence will be recognised and enforced in that jurisdiction.

## 6. CONFIDENTIALITY

6.1 You will not disclose information of a confidential nature acquired in consequence of this Licence, except for information which you may be entitled or bound to disclose by law or regulation, or which is requested by any regulatory or supervisory body or court of competent jurisdiction, or which is disclosed to your advisers if reasonably necessary for the performance of their professional services.

6.2 Notwithstanding Clause 6.1, you shall keep in strict confidence all technical and/or commercial know-how, specifications, inventions, processes and initiatives which are of a confidential nature and have been disclosed by the Supplier to you and disclosed by you to your employees and officers (strictly as necessary) and any other confidential information concerning the Supplier's business and/or Supplier's products which you may obtain, including but not limited to, the System. You shall ensure that your employees and officers, to whom you disclose such information, comply with this Clause 6.2.

6.3 You shall not use any such information provided under this Licence for any purpose other than to perform your obligations under this Licence.

6.4 The Supplier may disclose information relating to you to any of its affiliates to assist or enable the proper performance of its services under this Licence.

## 7. FEES

7.1 You agree to pay the Supplier a monthly fee of €1,000 for its services under this Licence when due and payable and such fees shall be invoiced to you quarterly in arrears (as amended from time to time) ("**Fee**"). All Fees shall be paid within 30 days from the invoice date without any set-off, deduction or withholding. If you fail to pay an invoice when due, the Supplier shall, without prejudice to any other right or remedy it may have, be entitled (but not obliged to):

  7.1.1 charge interest on the overdue amount at the rate of 6% above the Bank of England Rate at 11am London time, on the date on which it is to be determined. Interest will accrue daily on a compound basis and be calculated according to the actual number of days elapsed; and/or

CONFIDENTIAL  JHVM_0004774

7.1.2 on giving no less than 5 days' written notice to you, in its discretion suspend or restrict this Licence until the date of actual payment.

7.2 Any amounts expressed in this Licence as being payable by you are expressed exclusive of any tax including, without limitation, any value added tax, stamp duty, registration or any other taxes which may be chargeable as a result of the Licence and that you shall pay (in addition to and at the same time as paying any other consideration pursuant to this Licence) an amount equal to the amount of that tax (and the Supplier must provide an appropriate tax invoice to you evidencing such amount (if applicable)). Such taxes will be payable by the Supplier at the rate and in the manner prescribed by law.

8. **SCOPE OF RESPONSIBILITY**

8.1 The Supplier shall be responsible for and meet the full costs of any maintenance of the System that the Supplier deems necessary and any replacement or repair attributable to normal obsolescence or technical defects.

8.2 The Supplier shall use its reasonable endeavours to ensure continuous availability of the System during trading hours but in the event that the System becomes inaccessible for any period as a result of communication failure, inadequacy, defect, delay, error, failure in availability, breakdown or any other malfunction in or otherwise in connection with the System, a third party system or the internet, the Supplier shall not be liable for any such damages which have occurred during such period and which you may suffer or incur whatsoever. The Supplier shall use reasonable endeavours to rectify (including providing an alternative system (if applicable)) any such malfunction and/or connectivity failure and you acknowledge that this shall be your sole remedy for such failure.

8.3 You shall be solely responsible for all instructions submitted to the System by you or appearing to originate from you whether or not such instructions were entered by a person or persons properly authorised by you and you agree to unconditionally indemnify the Supplier accordingly.

8.4 Except as expressly stated herein, the System is provided on an "AS IS" basis only. Accordingly and to the maximum extent permitted by applicable law, the Supplier hereby disclaims all warranties and conditions, whether express, implied or statutory, regarding the System, including, but not limited to, any warranty of merchantability, satisfactory quality or fitness for a particular propose and non-infringement of third party rights.

8.5 You acknowledge that the Supplier is not responsible for the accuracy, quality, content or timeliness of the information on or passing through the System.

8.6 To the maximum extent permitted by applicable law, the Supplier expressly disclaims all warranties and conditions, whether express, implied or statutory relating to the accuracy, quality, content, processing, fulfilment, reviewing, controlling, or timeliness of instructions transmitted via the System.

8.7 You shall indemnify and hold harmless the Supplier (including its and any of its affiliates' respective employees, officers, directors and agents) from and against any and all claims (including third party claims), demands, legal actions or proceedings and all liabilities, damages, losses, expenses and costs (including legal and accounting fees and expenses collectively "**Losses**") arising out of or incidental to your use of, or access to, the System except to the extent that any Losses, as finally determined by a Court of competent jurisdiction, were caused solely and directly by fraud, gross negligence or wilful misconduct of the Supplier. In no circumstances will the Supplier have any liability arising from this Licence for any indirect, special, incidental, speculative, punitive or consequential loss or damage of any kind whatsoever (including but not limited to lost profit, goodwill, business opportunity or anticipated savings) ("**Excluded Losses**"),

        even if the Supplier was aware of the possibility of such damages and regardless of the form of action.

8.8     In the event that the Supplier is in breach of this Licence and such breach is reasonably capable of remedy, you agree that you will not bring a claim for damages against the Supplier in respect thereof without first having given the Supplier reasonable opportunity to remedy the breach, whether by correcting the defective System or otherwise.

8.9     Subject to this Clause 8, the Supplier shall fully indemnify you against direct losses, costs, charges and reasonable expenses arising from or incurred by reason of any claim, demand or action against you (as finally determined by a Court of competent jurisdiction), arising from or incurred by reason of the Supplier infringing any intellectual property right by the provision or use of the System, or any part thereof.

8.10    In the event of any claim, demand or action being made to which Clause 8.9 applies, the Supplier shall, at its own expense, take one or more of the following actions:

      8.10.1  use all reasonable efforts to procure for the benefit of you the right to continue to use the System; or

      8.10.2  modify or replace the System so that there is no further infringement, provided that such modification or replacement shall be effected by the Supplier with the minimum of interruption to the use of the System or impairment of its performance in accordance with the Licence.

8.11    If the Supplier has availed itself of its rights to modify the System or to supply a substitute system or services or to procure a licence pursuant to 8.10 and such exercise of the said rights has avoided any claim, demand or action for infringement or alleged infringement, then the Supplier shall have no further liability thereafter under this Clause 8 in respect of the said claim, demand or action.

8.12    You shall promptly notify the Supplier if any claim or demand is made or action brought against the Supplier to which Clause 8.9 may apply. You shall, at the request of the Supplier, afford to the Supplier all reasonable assistance for the purpose of contesting any claim or demand made or action brought against you to which Clause 8.9 may apply or any claim or demand notice. The Supplier shall at its own expense conduct any litigation arising there from and all negotiations in connection therewith and you hereby agree to grant to the Supplier exclusive control of any such litigation and such negotiations.

8.13    Clause 8.9 shall not apply insofar as any such claim or demand or action is in respect of:

      8.13.1  any use of, by or on behalf of you, the System in combination with any item not supplied by the Supplier where such use of the System directly gives rise to the claim, demand or action; or

      8.13.2  any modification carried out by or on behalf of you to any item supplied by the Supplier under this Licence if such modification is not authorised by the Supplier in writing.

8.14    The Supplier's maximum aggregate liability in respect of all Losses (excluding any Excluded Losses) arising under or in connection with this Licence shall not exceed € 60,000 at any time.

8.15    You acknowledge and understand that any and all risks and trading losses arising from or as a result of any instructions submitted by you or on your behalf will be your responsibility and that the Supplier will in no way be responsible for these.

LICENCE TERMS OF THE OCTAVE SYSTEM
FEBRUARY 2015

5

8.16   Nothing in this Licence shall exclude or limit any liability of the Supplier which cannot be lawfully excluded or limited.

## 9. SECURITY AND VIRUS CONTROL

9.1   You shall at all times be solely responsible to ensure that only authorised users are permitted access to the System and any passwords issued are kept secure and not disclosed or otherwise made available to any other person.

9.2   You shall be solely responsible for all instructions communicated by a person using a password of any authorised user.

9.3   You shall use an industry standard, commercially available anti-virus detection and scanning programme as part of your regular operating system.

## 10. TERMINATION

10.1   You may terminate this Licence at any time on giving the Supplier at least five business days' written notice.

10.2   The Supplier may terminate this Licence at any time (which may be immediate and if given orally, shall be followed by written confirmation as soon as is practicable to you).

10.3   Any termination pursuant to Clauses 10.1 or 10.2 shall not affect any accrued charges under this Licence or any legal rights or obligations which may already have arisen. All outstanding amounts owed by you to the Supplier must be repaid to the Supplier regardless of the termination of this Licence.

10.4   If either party terminates this Licence pursuant to Clause 9.1 or 9.2 the rights and obligations shall cease immediately on termination save for:

   10.4.1   each party's accrued rights and obligations at the date of termination; and

   10.4.2   the Clauses of 4, 6, 8.4 to 8.16, 10.3, 11, 12 and 16 shall remain in full force and effect until 5 years from the date of the termination of this Licence.

## 11. NOTICES

11.1   Unless otherwise agreed or set out herein, written notices (other than instructions) shall be made by email, registered mail or hand delivery to the address of the party concerned as set out on the first page of this Licence or as notified to the other party in writing or by email.

11.2   Any notice shall be deemed to have been received:

   11.2.1   if delivered by hand, on signature of a delivery receipt;

   11.2.2   if sent by pre-paid first-class post or other next working day delivery service, at 9.00 am on the second business day after posting; or

   11.2.3   if sent by email, unless the sender receives a prior delivery failure notice, one hour after transmission.

11.3   Where notice may be given by the Supplier by email, it shall be sent to the email address provided by you to the Supplier, and the provision of an email address by you to the Supplier constitutes consent by you to receiving such notices and other communication by email.

CONFIDENTIAL

JHVM_0004777

12. **NO RIGHTS UNDER CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 1999**

    A person who is not a party to this Licence will have no rights under the Contracts (Rights of Third Parties) Act 1999 to enforce any of the Licence.

13. **FORCE MAJEURE**

    13.1  The Supplier shall be excused from the performance of its obligations under this Licence by any event that is beyond the reasonable control of the Supplier (and for the avoidance of doubt shall not be liable to you for any delay, damages or losses resulting from or caused by such event) including, without limitation, currency restrictions, suspension or disruption of the normal procedures and practices, or disruption of the infrastructure, of any securities market or securities system, interruptions in telecommunications or utilities, any communication, system or computer failure; market default and suspension or other similar events or acts.

    13.2  You may be excused from the performance of your obligations under this Licence if an event is caused by the failure or closure, or the imposition or change of any law or governmental or regulatory requirement, nationalisation, expropriation, war, fire, explosion, flood, severe weather or other acts of God or any other event agreed by the Supplier.

14. **SEVERANCE**

    If any provision or part-provision of this Licence is or becomes invalid, illegal or unenforceable, it shall be deemed modified to the minimum extent necessary to make it valid, legal and enforceable. If such modification is not possible, the relevant provision or part-provision shall be deemed deleted. Any modification to or deletion of a provision or part-provision under this Clause shall not affect the validity and enforceability of the rest of this Licence.

15. **PARTIAL INVALIDITY**

    If, at any time, any provision of this Licence is or becomes illegal, invalid or unenforceable in any respect under any law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions nor the legality, validity or enforceability of such provisions under the law of any other jurisdiction will in any way be affected or impaired.

16. **VARIATION**

    16.1  The Supplier may amend this Licence with immediate effect where such amendment is necessary to comply with any legal or regulatory obligation to which the Supplier is subject. In such circumstances, the Supplier will provide you with notification of such amendments as soon as reasonably practicable which may be by email.

    16.2  Without prejudice to Clause 16.1, this Licence may be amended or varied by the Supplier from time to time. The Supplier may notify you of amendments and variations by email. The notice will state the date when the amendments or variations will come into effect.

    16.3  Except as provided by Clauses 16.1 and 16.2 above, this Licence may only be varied by the written agreement of both parties.

17. **GOVERNING LAW AND JURISDICTION**

    17.1  This Licence (and any non-contractual obligations arising out of or in connection with it) will be governed by and construed in accordance with English law.

CONFIDENTIAL                                                                                          JHVM_0004778

17.2    The English courts will have exclusive jurisdiction to settle any disputes or claims which may arise out of or in connection with this Licence (including a dispute relating to any non-contractual obligation arising out of or in connection with this Licence) for which purpose all parties agree to submit to such jurisdiction.

CONFIDENTIAL                                                                                                              JHVM_0004779