**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION | MASTER DOCKET<br><br>18-md-02865-LAK |
| This document relates to:<br>18-cv-04434; 18-cv-04833; 18-cv-07824;<br>18-cv-07827; 18-cv-07828; 18-cv-07829;<br>19-cv-01781; 19-cv-01783; 19-cv-01785;<br>19-cv-01788; 19-cv-01791; 19-cv-01792<br>19-cv-01794; 19-cv-01798; 19-cv-01800;<br>19-cv-01801; 19-cv-01803; 19-cv-01806;<br>19-cv-01808; 19-cv-01809; 19-cv-01810;<br>19-cv-01812; 19-cv-01813; 19-cv-01815;<br>19-cv-01818; 19-cv-01865; 19-cv-01866;<br>19-cv-01867; 19-cv-01868; 19-cv-01869;<br>19-cv-01870; 19-cv-01871; 19-cv-01873;<br>19-cv-01893; 19-cv-01894; 19-cv-01895;<br>19-cv-01896; 19-cv-01898; 19-cv-01904;<br>19-cv-01906; 19-cv-01911; 19-cv-01918;<br>19-cv-01922; 19-cv-01924; 19-cv-01926;<br>19-cv-01928; 19-cv-01929; 19-cv-01930;<br>19-cv-01931; 19-cv-10713; 21-cv-05339 | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF OFFERS OF PROOF
AND IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO
PRECLUDE DEFENDANTS' ASSERTION OF AN ADVICE OF COUNSEL DEFENSE**

Richard Markowitz, John van Merkensteijn and Robert Klugman ("Defendants") respectfully submit this memorandum in further opposition to plaintiff Skatteforvaltningen's ("SKAT") motion *in limine* ("Motion") regarding advice of counsel evidence, Dkt. 1125, as augmented by their response, Dkt. 1215, to Defendants' offers of proof ("Response").

The Motion originally sought only to preclude Defendants from asserting a "**formal** advice of counsel defense concerning their representations of ownership of shares and dividends" or from arguing that counsel "'**blessed**' [their] beneficial ownership representations," in the absence of shares. Motion at 2, 5 (emphases added). As Defendants already stated clearly, they intend to do neither, thus mooting the issue. Dkt. 1161 at 2–3. Defendants believed there were shares, and therefore did not seek advice on whether the transactions would work absent shares. But as laid out in great detail in their factual proffers, Defendants did seek and rely in good faith on legal advice related to the Danish transactions as they understood them. And they also sought and obtained legal advice with regard to other, highly similar transactions they pursued in Germany and Belgium. All of that legal advice bears directly on every single one of SKAT's claims and is powerful evidence of Defendants' good faith and lack of negligence, and also shows that the balance of the equities favors the defense. Now, SKAT seeks to keep out all this evidence. To exclude it would unfairly prejudice Defendants and engender the very confusion that Rule 403 seeks to avoid. For the reasons set forth below, the Motion should be denied.

## ARGUMENT

When evidence is challenged *in limine*, it should only be precluded when it is "clearly inadmissible on all possible grounds." *SEC v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013). Evidence of a defendant's reliance on advice from counsel is relevant to the factfinder's assessment of whether a defendant acted with fraudulent intent, *United States v. Scully*, 877 F.3d 464, 476 (2d

1

Cir. 2017), and courts "routinely allow the jury to hear evidence about interactions with and advice of counsel" even in cases where insufficient evidence for an advice of counsel instruction is ultimately found. *SEC v. Am. Growth Funding II, LLC*, 2018 WL 6322145, at *3 (S.D.N.Y. Dec. 4, 2018). This Court has similarly recognized that "'[e]vidence that a defendant relied on advice from counsel' or that attorneys were present for certain events can be probative of a defendant's intent." *See* Dkt. 1172 at 2 (quoting *SEC v. Lek Sec. Corp.*, No. 17 CV 1789, 2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019)); *see also United States v. Bankman-Fried*, 2023 WL 6392718 (S.D.N.Y. Oct. 1 2023) at *3 (there "may be circumstances in which lawyer presence, involvement, or advice known to the defendant at the time of his alleged misconduct might have a real bearing on whether he acted with or without fraudulent intent").

Indeed, legal advice bears on good faith even outside the confines of an advice of counsel defense, including advice that may have been provided directly to someone other than the party seeking to demonstrate good faith. *See, e.g.*, *Howard v. SEC*, 376 F.3d 1136, 1147–48 (D.C. Cir. 2004) (confirming that advice of counsel can be "simply evidence of good faith, a relevant consideration in evaluating a defendant's scienter," and crediting evidence of legal advice received by an offering party through an intermediary).

SKAT's Response relies largely on the District Court's decision in *SEC v. Tourre*. But *Tourre* is completely inapposite. There, the Court held that "it would be confusing and unduly prejudicial for [the party] to present extensive evidence on the presence and involvement of lawyers—who are presumably paid to ensure that any disclosures comply with the relevant legal requirements—while at the same time professing *not to have relied on their advice* in preparing or disseminating those disclosures." *Tourre*, 950 F. Supp. 2d at 684 (emphasis added). Precisely the opposite scenario is presented here: Defendants *do* claim that they received and relied in good faith

2

upon legal advice. To be sure, that legal advice did not include an opinion on the impact of the evidence SKAT later developed from documents seized in Dubai. But facts about conduct not known to Defendants are irrelevant to Defendants' state of mind and cannot bar the admission of advice they actually received and will offer to show their state of mind.[1]

Here, Defendants will meet SKAT's allegations of fraud, negligence and inequitable conduct with evidence of the complete story of their involvement in the transactions at issue. It is indisputable that Defendants engaged and consulted with no fewer than eight leading law firms, at significant expense, to ensure compliance with all applicable governing law. Counsel was integral to the design and review of various elements of Defendants' trading strategy, which was deployed in Denmark and in other countries, as well as the preparation and submission of the beneficial ownership declaration forms underpinning SKAT's allegations. It will be impossible for the jury in this case to fairly answer factual questions of *scienter* (for fraud claims), due care (for negligence claims), and whether "equity and good conscience" requires restitution (for unjust enrichment claims), if it is artificially deprived of Defendants' complete narrative.

Consider just one example: among the first written communications Solo sent Defendants regarding Danish trading was a formal tax opinion prepared by Hannes Snellman, a leading Danish law firm (the "2012 Hannes Opinion"). If Markowitz or van Merkensteijn are asked why they pursued the trading opportunity Solo offered in Denmark, the truthful answer would begin: "because Solo provided a legal opinion from the leading law firm in Denmark confirming that the

---

[1] Unlike Defendants here, the proponent in *Tourre* did not pay for the advice, nor waive privilege, and the Court merely precluded "undue focus" rather than granting the full preclusion SKAT seeks. *See Tourre*, 950 F. Supp. 2d at 684.

transactions as Solo described them to us worked in Denmark." To preclude Defendants from offering this straightforward testimony would deny them a fair trial.

A.  **The Evidence SKAT Seeks To Preclude Is Not "Clearly Inadmissible" on Any Possible Grounds But Directly Relevant to Defendants' Good Faith, Lack of Negligence or *Scienter*, and the Relative Equities.**

Defendants intend to show that their careful and frequent consultations with counsel, and the information they received from counsel, is probative of their state of mind, their absence of fraudulent intent, their carefulness and lack of negligence, and that the balance of the equities is in their favor. *See* Dkt. 1204 at 2. SKAT's conclusory response is that the jury will be confused and misled by Defendants' straightforward and well-documented evidence. SKAT wholly fails to identify the source of this "confusion," however, and its Motion seeks a draconian remedy to a non-existent problem. Below, Defendants address discrete evidence targeted for preclusion.

   i.  **Legal Opinions Issued to Third Parties And Reviewed By Defendants Are Not "Clearly Inadmissible" on Any Possible Grounds.**

Defendants indisputably received and carefully reviewed the 2012 Hannes Opinion. *See* Dkt. 1202 at 9; Dkt. 1204 at 5. The key conclusion reached in the 2012 Hannes Opinion is that "USPF should be regarded as the beneficial owner of the Danish Dividend for the purpose of the Denmark – U.S. Tax Treaty. Consequently, we find that USPF should be entitled to full exemption from Danish withholding tax on the Danish Dividend." Dkt. 1204-1 at WH_MDL_00518146.

SKAT invokes a single case, *Lek*, for the proposition that an advice of counsel defense cannot be premised on advice provided to others. But in *Lek,* the party claiming to have relied on the advice refused to waive privilege and did not know the facts considered by the lawyers in rendering it. *See Lek*, 2019 WL 5703944, at *3–4. That is emphatically not the case here. The 2012 Hannes Opinion recites in detail the factual premises and assumptions on which it is based. Dkt. 1204-1 at WH_MDL_00518142–43. Defendants here thus did not need to have a

4

conversation with Hannes Snellman to understand the facts on which its opinions were based. SKAT has not cited a single case rejecting an advice of counsel defense based on a formal written opinion that recited the facts and assumptions on which it was based on the theory that the defendant did not himself solicit the opinion. And the D.C. Circuit has forcefully explained why SKAT's argument "cannot be correct." *Howard*, 376 F.3d at 1148 (rejecting as illogical argument that would deny reliance defense to one company executive because another executive directly interfaced with outside counsel). So too here.

SKAT's invocation of boilerplate statements in the 2012 Hannes Opinion suggesting that only its recipient ought to rely on the advice, *see* Response at 4, ignores the context and intent of such language, which merely limits liability to a non-client. SKAT is free to raise these issues in cross-examination, but paints with too broad a brush when it claims that boilerplate language forecloses the jury from **considering** the probative nature of such evidence. *See, e.g.*, *Scully*, 877 F.3d at 473, 476.

SKAT's argument (Response at 6 & n.4) that Defendants "could not have 'understood'" that the 2012 Hannes Opinion applied to the trades in which they participated fails on multiple fronts. Defendants will testify that they **did** understand the facts set forth in the 2012 Hannes Opinion to match the facts of their trades in all material respects. SKAT may believe that testimony is incredible, but that is for the jury to evaluate. As the Second Circuit held in *Scully*, "[o]ne party to a trial will frequently believe that testimony offered by the other side is false or misleading," but that is "not a factor to be weighed against" admissibility. 877 F.3d at 375. A fair adversary proceeding requires that **both** sides be permitted equally to "offer their opposing theories and the evidence to support them," because the "relative significance of…facts…[is] for the jury to decide[.]" *United States v. Gramins*, 939 F.3d 429, 446, 453 (2d Cir. 2019).

5

SKAT's assertions (Motion at 6 n.4) that the transactions did not match the advice because the plans were obligated to pay fees to Ganymede or other plans (through partnership agreements) also miss the mark. Defendants do not dispute that the plans agreed to pay a portion of any *withheld dividend tax* received to Ganymede and to other pension plans, but that is not the same as an obligation to "pay any portion of the Danish *Dividend*," the caveat referenced in the 2012 Hannes Opinion. At no time were the plans obligated to pay any portion of any dividend to anyone; there is a difference between a dividend and withheld tax on a dividend. Yet even if SKAT were right that the two are the same as a matter of Danish law—an argument SKAT has not previously advanced—it is plainly relevant to their state of mind that Defendants *believed* the two were different.[2] SKAT's argument that the advice in the memorandum does not match the transactions is simply a basis for cross-examination, not for exclusion.

SKAT's challenge to the admissibility of the legal opinion reviewed by Klugman and prepared by Bech Bruun (the "Bech Opinion") should be rejected on similar grounds, as the jury (not SKAT) will be tasked with assessing how that opinion bears on Mr. Klugman's good faith. *See supra* at 4–5. SKAT challenges the Bech Opinion on the additional grounds that it was allegedly wrong. *See* Response at 7, n.6. Again, this challenge misses the point, as the jury could easily conclude that Klugman (a non-lawyer) lacked *scienter* and acted in good faith, notwithstanding the accuracy of the legal advice or subsequent events to which he was not privy

---

[2] SKAT also insists that the pension plans failed to "obtain unconditional ownership to the Equities," relying on an expert report signed by UK lawyer Felicity Toube. Response (Dkt. 1215) at 6. SKAT's submission fails to acknowledge that Defendants' expert in UK law, Richard Salter, completely disagreed with Toube's assessment of the plans' agreements under UK law. Feb. 28, 2022 Salter Report ¶¶ 75-78. As KC Salter explained, any transfer of title—which Toube asserted would apply "automatically"—would, in fact, "not have occurred automatically." *See, e.g.*, *id.* ¶ 76.5. And in any event, Toube's opinion on the law sheds no light on what Defendants themselves believed, the central question in evaluating their good faith.

6

at the time he reviewed the memorandum. *See Howard*, 376 F.3d at 1148 (reliance on legal advice that "turned out to be mistaken" can negate *mens rea*). SKAT will have ample opportunity to cross-examine Klugman at trial, and this Court's ruling deferring consideration of Defendants' motion to exclude evidence or argument concerning fines and penalties involving non-parties (Dkt. 1210) supports deferring consideration of SKAT's protestations of prejudice until trial.

ii. **Evidence Of Attorney Involvement in Dividend Arbitrage Transactions in Germany/Belgium Is Not "Clearly Inadmissible" on Any Possible Grounds.**

Before the Danish transactions at issue here, Defendants engaged in dividend arbitrage transactions with Solo Capital in Germany and Belgium which, they will argue, bolstered their belief that Solo was a reputable and legitimate market participant. *See* Dkt. 1202 at 8; Dkt. 1204 at ¶ 8. Those transactions, like the later Danish transactions, occurred only after Defendants received advice from leading law firms in both Germany (Norton Rose) and Belgium (Freshfields) and conducted extensive due diligence into Solo Capital and the legality of the proposed transactions. *See* Dkt. 1204 at § V.

Earlier in this litigation, SKAT argued that "[the German and Belgian investments] are ***central*** to SKAT's claims in that they ***bear directly*** on whether defendants Markowitz, van Merkensteijn, Klugman and Ben-Jacob acted with fraudulent intent, or at the very least were negligent, in submitting tax refund applications to SKAT." Dkt. 678 (emphasis added). SKAT now takes the opposite position, arguing that Defendants "should not be permitted to argue to the jury that they relied on legal advice under German or Belgian law" because those transactions have "no bearing" on their good faith defenses. Dkt. 1215 at 8. But the jury, not SKAT, may reasonably conclude otherwise, and find that Defendants' prior trading activity—and the counsel they sought and received—is highly probative of their state of mind (just as SKAT previously argued).

It should be uncontroversial that Defendants' transactions with Solo Capital in 2011 and 2012—and advice Defendants received in connection with those transactions—bears on Defendants' state of mind when evaluating similar trading with Solo in 2012-2015. Defendants contemporaneously understood the German and Belgian transactions to be quite similar in form to the Danish transactions. *See* Dkt. 1204 at 3–4; 35–53. Many of these transactions were conducted through the same Solo accounts, by the same plans, and pursuant to the same stock lending, trading, and custody systems and agreements. *Id.* The jury may find it relevant to its assessment of Defendants' state of mind that Defendants also received written opinions from German and Belgian counsel confirming the transactions complied with the law and entitled them to seek withholding tax refunds; the risk that the jury will confuse Germany or Belgium with Denmark is fanciful. Indeed, precluding this evidence would create a counterfactual narrative for the jury where Defendants' dealings with Solo Capital and trading in Denmark occurred in a vacuum. That would create the very prejudice and confusion which Rule 403 seeks to avoid.

### iii. Evidence of Kaye Scholer's Substantial Involvement And Administrative Support Is Not "Clearly Inadmissible" on Any Possible Grounds.

It is difficult to understate the role that Kaye Scholer played with respect to these transactions, and yet SKAT's motion would deprive the Defendants of presenting those central facts. Kaye Scholer reviewed and marked up many of the documents that were central to the implementation and execution of the transactions—Custody Agreements, Give Up Agreements, Forward Contracts, GMSLAs, and even memoranda prepared by foreign law firms. Kaye Scholer helped Defendants establish many of the pension plans at issue, and rendered extensive legal advice designed to ensure that certain aspects of the transactions the Plans undertook complied with applicable U.S. law. Defendants received advice from Kaye Scholer that the transactions "worked" as a matter of U.S. tax and pension law. *Id.* at 11. Kaye Scholer attorneys served as

8

authorized representatives of the pension plans and signed—directly or through subsequent appointment—some of the very beneficial owner declarations that SKAT now claims to be fraudulent. *Id.* at 10. And Kaye Scholer advised on related matters once the trading had commenced, such as TIC filing requirements (based on the purchase of foreign securities) and FBAR filings (reporting the accounts with Solo and other custodians).

In all, Kaye Scholer billed Defendants approximately $2.2 million for its advice in connection with dividend arbitrage transactions. *See* Dkt. 1204 at 10. Precluding evidence of Kaye Scholer's role would leave the jury with the false impression that Defendants acted alone in making the representations at the heart of this case.

B. **There Is No Unfair Prejudice or Risk of Jury Confusion From Admitting Defendants' Proffered Evidence.**

SKAT cannot identify any unfair prejudice resulting from the introduction of Defendants' proffered evidence of their reliance on counsel. There is no risk that the jury might *mistakenly* assume that counsel's mere presence meant that they must have implicitly blessed the transactions. Rather, as Defendants proffered, the evidence shows that counsel, within their respective areas of competence, *explicitly did* bless the transactions as Defendants understood them, repeatedly, including in writing. *See* Dkt. 1204 at ¶¶ 12-14, 105, 116, 130, 137, 141, 143. SKAT is, of course, free to argue that the transactions had additional features and seek to persuade the jury that Defendants knew of these features but did not share them with their counsel. But SKAT is not entitled to avoid adversary testing of its case by excluding the very advice that Defendants actually received and will testify they relied upon in good faith.

SKAT's separate argument that Defendants should be precluded from offering evidence of other legal opinions issued by Hannes Snellman in 2013 and 2014 that they never received (Response at 7–8) misses the point. SKAT bears the burden of proving that Defendants' alleged

9

negligence caused SKAT's injury. *Pasternack v. Laboratory Corp.,* 27 N.Y.3d 817, 825 (2016). If SKAT asserts negligence in failing to directly solicit advice from Danish counsel, or for not specifically asking whether their receipt of dividend compensation payments entitled them to refunds of withheld dividend tax, the 2013 and 2014 Hannes Snellman opinions confirm that argument would fail at the causation step. The opinions show that if Defendants *had* sought such advice, they would have received the same favorable advice Hannes Snellman provided other clients. Either SKAT must be prohibited from arguing that Defendants should have sought that advice, or Defendants must be able to present the full picture of the advice that one of Denmark's leading law firms provided during the relevant time period.

Finally, any artificial truncation of Defendants' trial narrative would *create* the very confusion that Rule 403 seeks to prevent. Consider how Defendants might answer the following question: "What is the basis for your testimony that you did not knowingly make a material misrepresentation with intent to deceive?" Absent the draconian limitations sought by SKAT, Defendants might answer such question as follows: "*First*, I did not directly make any representation to SKAT. A reclaim agent did so, upon appointment by Kaye Scholer. *Second*, I granted power of attorney to Kaye Scholer to make such appointment only after expending millions of dollars and consulting with Kaye Scholer and over one-half dozen law firms to ensure to the best of my ability that the transaction at issue was legal." If SKAT's motion is granted, no part of that truthful answer would be admissible. This scenario would be especially confusing because Michael Ben-Jacob will be seated in the courtroom *as a defendant* and will, presumably, be permitted to testify about his role among the many lawyers advising Defendants in connection with these transactions. Accordingly, SKAT's motion should be denied or deferred until trial.

Dated: New York, New York
October 16, 2024

        Respectfully submitted,

        KOSTELANETZ LLP

        By:     */s/ Sharon L. McCarthy*
        Sharon L. McCarthy
        7 World Trade Center, 34th Floor
        New York, New York 10007
        Tel: (212) 840-6866
        smccarthy@kostelanetz.com

        Nicholas S. Bahnsen
        Daniel C. Davidson
        601 New Jersey Avenue, NW
        Suite 260
        Washington, DC 20001
        Tel: (202) 875-8000
        nbahnsen@kostelanetz.com
        ddavidson@kostelanetz.com

*Attorneys for Defendants John van Merkensteijn, III, Elizabeth van Merkensteijn, Azalea Pension Plan, Basalt Ventures LLC Roth 401(K) Plan, Bernina Pension Plan, Bernina Pension Plan Trust, Michelle Investments Pension Plan, Omineca Pension Plan, Omineca Trust, Remece Investments LLC Pension Plan, Starfish Capital Management LLC Roth 401(K) Plan, Tarvos Pension Plan, Voojo Productions LLC Roth 401(K) Plan, Xiphias LLC Pension Plan*

WILMER CUTLER PICKERING HALE AND DORR LLP

By:     */s/ Peter G. Neiman*
Boyd M. Johnson
Peter G. Neiman
Alan E. Schoenfeld
Nelson S. Castano
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Boyd.Johnson@wilmerhale.com
Peter.Neiman@wilmerhale.com
Alan.Schoenfeld@wilmerhale.com
Nelson.Castano@wilmerhale.com

Andrew S. Dulberg
60 State Street
Boston, MA 02109
(617) 526-6352
Andrew.Dulberg@wilmerhale.com

Brittany R. Warren
2100 Pennsylvania Avenue, N.W.
Washington D.C., 20037
(202) 663-6772
Brittany.Warren@wilmerhale.com

*Attorneys for Defendants Richard Markowitz, Jocelyn Markowitz, Avanix Management LLC Roth 401(K) Plan, Batavia Capital Pension Plan, Calypso Investments Pension Plan, Cavus Systems LLC Roth 401(K) Plan, Hadron Industries LLC Roth 401(K) Plan, RJM CapitalPension Plan, RJM Capital Pension Plan Trust, Routt Capital Trust*

KATTEN MUCHIN ROSENMAN LLP

By:     */s/ David L. Goldberg*
David L. Goldberg
Michael M. Rosensaft

50 Rockefeller Plaza
New York, NY 10020
Tel.: (212) 940-8800
Fax: (212) 940-8776
david.goldberg@katten.com

*Attorneys for Defendants Robert Klugman, RAK Investment Trust, Aerovane Logistics LLC Roth 401K Plan, Edgepoint Capital LLC Roth 401K Plan, Headsail Manufacturing LLC Roth 401K Plan, The Random Holdings 401K Plan, The Stor Capital Consulting LLC 401K Plan*